**No. 16-17138**
**PRO BONO**

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

_____

LESLIE CRAWFORD,

*Appellant*

vs.

CITY OF BAKERSFIELD, et al.,

*Appellees*

_____

On Appeal from the United States District Court
for the Eastern District of California
Case No. 14-cv-01735-SAB
(Honorable Stanley A. Boone)

_____

**APPELLANT'S OPENING BRIEF**

_____

<div style="margin-left:40%">

Emily T. Kuwahara (SB# 252411)
Daniel P. Wierzba (SB# 291290)
Joel Mallord (SB# 302764)
Alice Hall-Partyka (SB# 318196)
CROWELL & MORING LLP
515 S. Flower St. 40th Floor
Los Angeles, CA 90071
Telephone: 213-622-4750
Facsimile:  213-622-2690
dwierzba@crowell.com

*Attorneys for Appellant Leslie Crawford*
**Pro Bono**

</div>

# **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION .......................................................1

ISSUES PRESENTED FOR REVIEW ................................................1

STATUTORY AND REGULATORY PROVISIONS ...........................2

STATEMENT OF THE CASE AND FACTS......................................2

    I.    Mr. Dozer Was A Gentle Man Who Struggled with
Schizophrenia. ..................................................................4

    II.   In Accordance with Modern Policing Standards, Officer
Stringer Had Been Trained to De-Escalate Encounters with
Persons Suffering from Mental Illness ..............................5

    III.   Officer Stringer Escalated the Situation and Killed Mr. Dozer...........7

        A.    Officer Stringer Was Called After Mr. Dozer Attempted
to Light Himself On Fire and Inflict Self-Harm. .....................7

        B.    When Officer Stringer Arrived at the Scene, Mr. Dozer
Displayed Symptoms of Mental Illness...................................9

        C.    Officer Stringer Confronted Mr. Dozer Without Backup
and Shot Him...........................................................................9

    IV.   The District Court Excluded Evidence of Mr. Dozer's Mental
Illness From Being Introduced at Trial............................12

    V.   Officer Stringer's Counsel Urged the Jury to Enter a Verdict
Against Ms. Crawford Because She Had Failed To Produce
Evidence that Mr. Dozer Suffered from Mental Illness ...................13

STANDARD OF REVIEW ..............................................................15

SUMMARY OF ARGUMENT .........................................................15

ARGUMENT...................................................................................17

    I.    The District Court Abused Its Discretion When It Excluded
Evidence of Mr. Dozer's Mental Illness From Being Introduced
at Trial ..............................................................................18

        A.    The Standard for Admitting Relevant Evidence is
Inclusive ...............................................................................18

B. Evidence of Mr. Dozer's Mental Illness Was Relevant to Both the Excessive Force and Negligence Claims .................. 19

    1. Evidence of Mental Illness Is Relevant to Whether Police Use of Force is Reasonable ............................... 20

    2. Evidence of Mental Illness Is Relevant to the Standard of Care Officer Stringer Owed to Mr. Dozer ......................................................................... 22

    3. The District Court Erred in Holding that Ms. Crawford's Testimony was Irrelevant Because Her Observations Did Not Occur on the Day of the Incident ...................................................................... 22

C. The District Court was Wrong When It Determined that Ms. Crawford Could Not Testify Regarding Her Son's Mental Illness Because She is Not an Expert. ........................ 23

II. The District Court's Error in Excluding Relevant Evidence of Mr. Dozer's Schizophrenia and Mental Illness Prejudiced Ms. Crawford .......................................................................... 26

III. This Case is Emblematic of a Larger Injustice That Mentally Ill Persons Constitute a Larger Share of Victims of Excessive Force Than in Years Past ................................................. 30

CONCLUSION ........................................................................... 33

STATEMENT OF RELATED CASES ........................................ 35

CERTIFICATE OF COMPLIANCE ........................................... 36

CERTIFICATE OF SERVICE .................................................... 37

ADDENDUM .............................................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carter v. United States*,
  252 F.2d 608 (D.C. Cir. 1957) .......................................................................24

*Chiang v. Potter*,
  No. 09 CIV 3794 JCF, 2010 WL 3185778
  (S.D.N.Y. Aug. 11, 2010) ...............................................................................25

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)........................................................................................18

*Deorle v. Rutherford*,
  272 F.3d 1272 (9th Cir. 2001)...................................................................20, 21

*Drummond ex rel. Drummond v. City of Anaheim*,
  343 F.3d 1052 (9th Cir. 2003)........................................................................20

*Geurin v. Winston Indus., Inc.*,
  316 F.3d 879 (9th Cir. 2002).............................................................15, 27, 29

*Glenn v. Washington County*,
  673 F.3d 864 (9th Cir. 2011)..............................................................19, 20-21

*Glover v. BIC Corp.*,
  6 F.3d 1318 (9th Cir. 1993).....................................................................15, 27

*Ladd v. County of San Mateo*,
  12 Cal. 4th 913 (1996) ....................................................................................22

*Lawson v. Lawson*,
  No. 3:14-CV-00345-WGC, 2015 WL 5474763
  (D. Nev. Sept. 17, 2015) ...........................................................................25, 26

*Naples v. United States*,
  344 F.2d 508 (D.C. Cir. 1964) .......................................................................24

*Sprint/United Mgmt. Co. v. Mendelsohn*,
  552 U.S. 379 (2008)........................................................................................18

*Tatum v. United States*,
   190 F.2d 612 (D.C. Cir. 1951) ..........................................................................25

*United States v. Curtis*,
   568 F.2d 643 (9th Cir. 1978)...............................................................................18

*United States v. Jordan*,
   485 F.3d 1214 (10th Cir. 2007).........................................................................18

*United States v. Lawson*,
   653 F.2d 299 (7th Cir. 1981).................................................................... 24-25

*United States v. Mitchell*,
   No. 2:08CR125DAK, 2009 WL 3181938 (D. Utah Sept. 28, 2009)................25

*United States v. Murzyn*,
   631 F.2d 525 (7th Cir. 1980).............................................................................18

*United States v. Pickett*,
   470 F.2d 1255 (D.C. Cir. 1972) ......................................................................24

*United States v. Toney*,
   599 F.2d 787 (6th Cir. 1979).............................................................................28

*Wagner v. County of Maricopa*,
   747 F.3d 1048 (9th Cir. 2013).......................................................15, 27, 28-29

**Statutes**

28 U.S.C. § 1291......................................................................................................1

42 U.S.C. § 1983.................................................................................. 1, 12, 17, 38

**Rules**

Fed. R. App. P. 4......................................................................................................1

Fed. R. App. P. 32..................................................................................................36

Fed. R. Evid. 401 .......................................................................................1, 16, 18

Fed. R. Evid. 402 ....................................................................................................1

Fed. R. Evid. 701 ..............................................................................................24, 25

Fed. R. Evid. 702 ................................................................24

Ninth Circuit Rule 28-2.6...................................................35

Ninth Circuit Rule 28-2.7.....................................................2

Ninth Circuit Rule 32-1 ......................................................37

**Other Authorities**

AMERICAN CIVIL LIBERTIES UNION CALIFORNIA, PATTERNS &
    PRACTICES OF POLICE EXCESSIVE FORCE IN KERN COUNTY (Nov.
    2017) .............................................................................30

CALIFORNIA COMMISSION ON PEACE OFFICER STANDARDS AND
    TRAINING, MENTAL HEALTH TRAINING IN THE REGULAR BASIC
    TRAINING COURSE, availablet at https://www.post.ca.gov/mental-
    health-training-in-the-regular-basic-course.aspx ...............31

GARY CORDNER, U.S. DEP'T OF JUSTICE, OFFICE OF COMMUNITY
    ORIENTED POLICING SERVICES, PEOPLE WITH MENTAL ILLNESS:
    PROBLEM-ORIENTED GUIDES FOR POLICE (May 2006) ..................5-6, 30-31, 32

DORIS A. FULLER ET AL., TREATMENT ADVOCACY CENTER,
    OVERLOOKED IN THE UNDERCOUNTED: THE ROLE OF MENTAL
    ILLNESS IN FATAL LAW ENFORCEMENT ENCOUNTERS (2014) ...........31

Kern Medical Department of Psychiatry, *available at*
    http://www.kernmedical.com/health-professionals/residency-
    programs/psychiatry-residency/ .......................................4

Kate Mather & James Queally, *More Than a Third of People Shot by
    L.A. Police Last Year Were Mentally Ill, LAPD Report Finds*, L.A.
    TIMES, Mar. 1, 2016......................................................30

John Sullivan et al., *Nationwide, Police Shot and Killed Nearly 1,000
    People in 2017*, WASH. POST, Jan. 6, 2018..................6, 30

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Appellant Leslie Crawford appeals the final judgment of the United States District Court for the Eastern District of California entered on October 20, 2016 after a jury verdict in favor of Appellees on Ms. Crawford's claims for violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and negligence resulting from the shooting death of her son, Michael Dozer, by Appellee Aaron Stringer, a former police officer for Appellee City of Bakersfield. Appellant's Excerpts of Record "ER" 003.

Ms. Crawford also appeals the order of the District Court dated October 14, 2016 that erroneously granted Appellees' motion *in limine*, which excluded Ms. Crawford from introducing evidence at trial of the schizophrenia and mental illness that Mr. Dozer suffered. (ER 007 - 020).

On November 17, 2016, Ms. Crawford timely filed a notice of appeal with the District Court. *See* Fed. R. App. P. 4. (ER 001 – 002).

## ISSUES PRESENTED FOR REVIEW

1. Whether the District Court abused its discretion under Federal Rules of Evidence 401 and 402 when it excluded evidence that Michael Dozer suffered from severe mental illness at the time he was shot and killed by now-former Bakersfield police officer Aaron Stringer, even though that evidence was at the heart of Plaintiff's claims that Officer Stringer used excessive force after

- 1 -

negligently failing to recognize Mr. Dozer as mentally ill and failing to follow policing standards for dealing with persons suffering from mental illness.

2.    Whether the District Court's erroneous exclusion of evidence of mental illness prejudiced Ms. Crawford at trial by depriving the jury of probative evidence on a threshold issue, particularly when Officer Stringer's counsel argued to the jury that it should issue a verdict against Ms. Crawford because she failed to produce that very same evidence, and further insinuated that Mr. Dozer was actually under the influence of drugs when Officer Stringer shot and killed him.

## STATUTORY AND REGULATORY PROVISIONS

Pursuant to Ninth Circuit Rule 28-2.7, the pertinent statute, 42 U.S.C. § 1983, is reproduced in the attached addendum.

## STATEMENT OF THE CASE AND FACTS

Michael Dozer, a 26-year-old man, was shot and killed by now-former[1] Bakersfield Police Department officer, Aaron Stringer, on Wednesday, August 6, 2014, while exhibiting symptoms of a mental illness—schizophrenia—that he had battled since childhood.  (ER 041, 049, 052-53, 223).  Before Officer Stringer arrived at the gas station where the shooting occurred, Mr. Dozer, in the throes of mental illness, had attempted to set himself on fire and had frightened some of the

---

[1]  Officer Stringer was terminated from the police department for conduct not directly related to this incident.  (ER 009).

gas station customers with other behavior such as pacing and shouting.  (ER 128, 156-157, 159, 169, 171).

When Officer Stringer arrived at the scene, however, Mr. Dozer was away from other individuals and committing no crime.  (ER 081, 083, 085).  Officer Stringer nonetheless aggressively confronted and shouted at Mr. Dozer without waiting for the backup he had just called, which arrived less than a minute later and just as he shot Mr. Dozer.  (ER 072-73, 077, 086, 125).  In doing so, Officer Stringer violated modern policing standards, on which he had been trained, for dealing with individuals suffering from mental illness in a manner calculated to avoid escalating the encounter.  (ER 053, 063, 140-141). These standards required him to wait for backup, to then approach Mr. Dozer calmly and in a non-threatening manner, and to use non-lethal force to subdue Mr. Dozer, if necessary and possible.  (ER 062, 148-149, 151).  By violating these standards, Officer Stringer needlessly and foreseeably escalated what could have been a harmless encounter into a fatal shooting.  (ER 152).

Mr. Dozer's mother, Leslie Crawford, filed this case against Officer Stringer and the City of Bakersfield for negligence and excessive force.  (ER 341-342, 322-339).  The District Court, however, crippled her case by ruling before trial that evidence of Mr. Dozer's mental illness—the very condition that determined what policing standard should apply—was irrelevant and could not be introduced at

trial. (ER 007-020). Officer Stringer's counsel exploited that erroneous ruling by arguing to the jury that Ms. Crawford failed to make out her case by not producing evidence of mental illness. (ER 183-184, 188). Predictably, on that incomplete and biased record, the jury ruled in Appellees' favor. (ER 004-006).

## I.    Mr. Dozer Was A Gentle Man Who Struggled with Schizophrenia.

Mr. Dozer is remembered by his family as gentle, without violent or physically aggressive tendencies. (ER 224). He was quiet, easygoing, and generally stayed to himself. (ER 219). He loved his siblings and was close with his mom, Ms. Crawford. (ER 219-220).

Mr. Dozer also suffered from schizophrenia. (ER 219). He would ask his mom, "Why do these voices keep messing with me?" (ER 220). He sought treatment and counseling, at a center called Turning Point, and maintained a support network in his family to try to attain a level of functioning despite his mental illness and its debilitating symptoms. (ER 220, 223, 226). He learned to weld and took classes with the Job Corps. (ER 225). During a crisis, Mr. Dozer's mother, Ms. Crawford, or his sister would take him to the Mary K. Shell Mental Health Center or 3-B.[2] (ER 226). He would take the various medications that were prescribed to him. (ER 220).

---

[2]    Ms. Crawford's reference to 3-B in her deposition is the Kern Medical Psychiatric Inpatient Unit located in Bakersfield, California. *See* Kern Medical (Continued…)

The medications would only be effective for a period of time, however, and Mr. Dozer would occasionally suffer episodes in which he wound up out of the household and on the streets.  (ER 220-221, 223).  In those times, he would often hear voices and wander the streets talking to himself.  (ER 220-221, 223).

On the day he was shot and killed, Mr. Dozer exhibited signs of mental illness.  He paced, talked and shouted to himself, knocked things over, and tried to set himself on fire.  (ER 128, 156-157, 159, 169, 171; Motion to Transmit Physical Exhibits ("Motion to Transmit"), Exhibit A, at 3 minutes, 30 seconds).  In short, he needed help.

## II.    In Accordance with Modern Policing Standards, Officer Stringer Had Been Trained to De-Escalate Encounters with Persons Suffering from Mental Illness

The Bakersfield Police Department had trained Officer Stringer to use particular tactics in responding to individuals suffering from mental illness, specifically to avoid creating tragic confrontations like this one.  Indeed, there has been a growing awareness in recent decades of an unacceptable trend of severe injury and death to persons suffering from mental illness during police encounters.  One 2006 Department of Justice study estimated that people with severe mental illness are four times more likely to be killed by police.  GARY CORDNER, U.S.

---

Department of Psychiatry, *available at* http://www.kernmedical.com/health-professionals/residency-programs/psychiatry-residency/.

DEP'T OF JUSTICE, OFFICE OF COMMUNITY ORIENTED POLICING SERVICES, PEOPLE WITH MENTAL ILLNESS: PROBLEM-ORIENTED GUIDES FOR POLICE 1 (May 2006). And encounters between police and persons with mental illness are common: the same study found that 92 percent of patrol officers surveyed had at least one encounter with a mentally ill person in crisis in the previous month. *Id.* Sadly, despite progress in police methods and training, mental health "played an outsized role" in the shooting deaths of 236 people at the hands of police in 2017 alone. John Sullivan et al., *Nationwide, Police Shot and Killed Nearly 1,000 People in 2017*, WASH. POST, Jan. 6, 2018.

In light of this crisis, the Police Officer Standards and Training ("POST"), on which officers are trained, instructs police officers on how to recognize symptoms of mental illness and respond to persons with mental illness in a way that avoids escalating the situation. (ER 144-145). Officer Stringer was so trained. (ER 053, 061-062). Officer Stringer was specifically trained to recognize erratic and irrational behavior and attempted self-harm as indicators of mental illness. (ER 144-145, 064, 167). He was further trained that when responding to a situation involving a person with mental illness, he should slow things down, wait for backup, and consider ways of subduing the person using minimal force. (ER 148-150, 062-063, 065). And he was trained to minimize the anxiety of the person

by, for example, talking softly, moving slowly, and turning his radio down. (ER 151).

On August 6, 2014, when he shot and killed Mr. Dozer, Officer Stringer did none of these things.

### III. Officer Stringer Escalated the Situation and Killed Mr. Dozer

#### A. Officer Stringer Was Called After Mr. Dozer Attempted to Light Himself On Fire and Inflict Self-Harm.

At around 12:30 pm on Wednesday, August 6, 2014, Elsa Torres was pumping gas at the TMP gas station at 2140 East Brundage Lane in Bakersfield, California. (ER 041-042, 052-053; Motion to Transmit, Ex. A, at 3:15 of video). While she was pumping gas, Mr. Dozer approached her vehicle and removed the gas nozzle from the gas tank. (ER 043; Motion to Transmit, Ex. A, at 3:20 of video). Mr. Dozer sprayed gas onto the ground around himself. (ER 045; Motion to Transmit, Ex. A, at 3:25 of video). Some gas spilled onto Ms. Torres when the nozzle was removed from the vehicle, but Mr. Dozer did not attempt to spray her further. (ER 043, 166).

Ms. Torres returned to her car quickly and immediately without any interference from Mr. Dozer. (ER 043; Motion to Transmit, Ex. A, at 3:25 of video). At this point, after Ms. Torres was away from him, Mr. Dozer used a lighter to set on fire the area beneath his feet. (ER 043; Motion to Transmit, Ex. A, at 3:30 of video). Ms. Torres drove away. (ER 043; Motion to Transmit, Ex. A, at

3:30 of video).  The small fire lasted about twenty-seven seconds before going out.  (ER 229; Motion to Transmit, Ex. A, at 3:45 of video).  Neither Ms. Torres nor her vehicle came in contact with the fire.

Officer Stringer, then an officer with the Bakersfield Police Department, was on patrol alone when he received a call through dispatch notifying him of an incident at the TMP gas station involving gasoline being poured on a woman and an attempt to light a fire.  (ER 096, 099).  On his way to the gas station, he was further advised, incorrectly, that the woman had been set on fire and that she had put the fire out and then fled.  (ER 100).  He was only a couple minutes away from the gas station when he received the call.  (ER 100).

Upon arriving at the gas station, Officer Stringer exited his vehicle and used his radio to call for backup.  (ER 070-071).  He quickly spoke with Ms. Torres, who was far away from Mr. Dozer.  (ER 075, 161).  Officer Stringer did not observe any burn injuries or external signs of trauma on Ms. Torres, and she did not say that she had been burned or injured in any way.  (ER 076-077).  Officer Stringer also quickly spoke with eyewitness Angel Mora, who also did not say he was injured or that he saw any other person being physically injured.  (ER 077-078).  Officer Stringer spent only a matter of seconds talking to these witnesses and did not talk to any other witnesses. (ER 079).

### B. When Officer Stringer Arrived at the Scene, Mr. Dozer Displayed Symptoms of Mental Illness.

By the time Officer Stringer arrived, Mr. Dozer was about twenty feet away from the closest persons to him, and he was not engaging with those individuals. (ER 083). Mr. Dozer had gone to a partially fenced-in area away from the pumps and any other individuals. (ER 105, 085). According to witnesses, he was acting erratically, pacing back and forth, but he was not harming anyone. (ER 128). One witness stated he was knocking down some stands near the mini mart. (ER 159). Another witness said he was hitting the table with his hands and was standing up and sitting down. (ER 171). He was saying "odd things" to himself. (ER 169). Mr. Dozer was exhibiting signs of his mental illness.

### C. Officer Stringer Confronted Mr. Dozer Without Backup and Shot Him

Thus, when Officer Stringer decided to confront Mr. Dozer, no crime was in progress and the scene had calmed down. (ER 081). Nevertheless, Officer Stringer decided to confront Mr. Dozer before additional officers arrived (which they did less than a minute later). (ER 072-073; Motion to Transmit, Ex. B, at 1:10-1:30 of video). Officer Stringer was wearing a blue polo shirt, with a police badge embroidered on the left breast, and khaki cargo pants. (ER 069). Carlos Cabrera, an eyewitness, testified that he could not tell whether Officer Stringer was

an officer at the time and was not aware of that until after the fatal shooting occurred. (ER 172).

Even though at least one witness testified that she could tell that Mr. Dozer was "unapproachable," (ER 128), and Officer Stringer himself testified that he saw that Mr. Dozer's behavior was erratic, (ER 093), within seconds of arriving on the scene and being pointed to Mr. Dozer, Officer Stringer approached Mr. Dozer without any further investigation. (ER 100-101; Motion to Transmit, Ex. B, at 1:10 of video). He did not wait for backup, instead claiming that when he confronted Mr. Dozer he did not have time to wait for backup. (ER 072-073, 088, 090-091, 100). When he was about twenty feet away from Mr. Dozer, he ordered Mr. Dozer to get on the ground. (ER 091, 129). Officer Stringer testified that he felt Mr. Dozer was "challenging" him. (ER 114). However, Rosalie Montiel, an eyewitness, said Mr. Dozer was "just standing there." (ER 129). Mr. Dozer picked up a horseshoe-shaped bicycle lock, when Officer Stringer was about seventeen feet from him. (ER 114, 121). Officer Stringer told Mr. Dozer to get on the ground and put the bicycle lock down. (ER 129). Officer Stringer claims Mr. Dozer continued to move "quickly" at him with the bicycle lock lifted over his head. (ER 109). Ms. Montiel testified that the bicycle lock was never above Mr. Dozer's shoulder at this time. (ER 130). Officer Stringer testified that Mr. Dozer never swung the bike lock at him. (ER 094, 130).

Officer Stringer drew his firearm, a .40 caliber semiautomatic handgun, as Mr. Dozer walked toward him. (ER 097, 066). Officer Stringer was also carrying at least three other weapons: a functioning Taser capable of firing probes or operating in a "drive stun" mode, pepper spray, and a baton. (ER 067-068, 117). Officer Stringer was also three to four inches taller than Mr. Dozer, and Officer Stringer weighed one hundred seventy pounds, which he estimated to be heavier than Mr. Dozer. (ER 119). Nevertheless, less than a minute after arriving on the scene, Officer Stringer fired his handgun at Mr. Dozer.[3]

Officer Vasquez, who was the backup called by Officer Stringer, arrived in time to observe the shooting. (ER 125-126; Motion to Transmit, Ex. B, at 1:30 of video). Within about ten seconds of the shooting, Officer Vasquez had exited his vehicle and was standing beside Officer Stringer. (ER 125, 075).

The round that Officer Stringer fired at Mr. Dozer entered his abdomen. (ER 232). Mr. Dozer died as a direct result of the gunshot wound. (ER 232). Although it is not clear exactly how far Officer Stringer was away when he shot and killed Mr. Dozer, there was no evidence of close or intermediate range of fire, such as signs of soot or stippling on Mr. Dozer's body. (ER 232).

---

[3] Officer Stringer estimated the shooting was either within twenty to thirty seconds, or in another instance forty to fifty seconds, of his arrival at the scene. (ER 086, 077; Motion to Transmit, Ex. B, at 1:10-1:30 of video).

**IV.** **The District Court Excluded Evidence of Mr. Dozer's Mental Illness From Being Introduced at Trial.**

Ms. Crawford initiated this action by filing a complaint for violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and negligence against Appellees in the United States District Court for the Eastern District of California on November 6, 2014. (ER 341-342). She filed an amended complaint on May 27, 2015. (ER 322-339).

On October 6, 2016, Officer Stringer filed a motion *in limine* seeking to exclude any and all evidence of Mr. Dozer's schizophrenia and mental illness from being introduced at trial, claiming the evidence was irrelevant. (ER 237-266). Ms. Crawford filed an opposition on October 12, 2016, responding that such evidence would be relevant for, among other things, determining Officer Stringer's negligence, as Mr. Dozer demonstrated behavioral indicators of mental illness at the time of the shooting and a specialized tactical response is necessary in encounters with mentally ill individuals. (ER 213-216). On October 14, 2016, the District Court granted Appellees' motion *in limine*. (ER 007-020).

In granting the motion, the District Court acknowledged that evidence of mental illness was relevant, but reasoned that Ms. Crawford could not testify about Mr. Dozer's mental illness because (1) she was not qualified to testify as to medical diagnoses, and (2) her personal observations were irrelevant because she was "not testifying as to her observations on the date of the incident but as to her

prior knowledge of Decedent's mental illness." Orders on Motions in Limine, (ER 018). According to the court, "Plaintiff's testimony regarding her observations of Decedent on other occasions is not relevant to the issue of whether Officer Stringer should have known that that Decedent's behavior could have been caused by mental illness." *Id.*

## V. Officer Stringer's Counsel Urged the Jury to Enter a Verdict Against Ms. Crawford Because She Had Failed To Produce Evidence that Mr. Dozer Suffered from Mental Illness

The District Court conducted a jury trial on October 18, 19, and 20, 2016. Officer Stringer's counsel began closing argument by appealing to the jury's political sympathies, describing how "[b]eing a police officer these days is not easy," that "[n]one of us really know what it's like," and implying that it was unfair that, "[o]n top of all this, their conduct is subject to judicial scrutiny." (ER 176-177). He then commented on how "[t]he media focuses on the individual who may be shot . . . , but [this system] is also here to protect police officers." (ER 178). After all, he opined, "They have families too." (ER 178).

He then launched into a confusing discussion about the state of the law, asserting that "[t]raining materials at an academy early in the career of a law enforcement officer are not the rule of law" and that "[r]elying on what [Ms. Crawford's expert] said were the general minimum guidelines . . . to dictate this case is wrong and inappropriate." (ER 178). And later, "Have we really come to

the point of scrutinizing every step, frame by frame, moment by moment in regards to the conduct of law enforcement in 20/20 hindsight? Now, we haven't. That isn't the standard to apply. That's the standard Mr. Dunn wants you to apply, but that's not fair to the police officer. And, again, the rule of law is much different than that." (ER 184).

Finally, in his coup de grace, Officer Stringer's counsel argued that the jury should reach a verdict against Ms. Crawford for lack of evidence of mental illness, which he had persuaded the Court to exclude:

> Let me also say this. In this court of law, the Plaintiffs have the burden of proof. They have to prove the case. Have you heard any evidence from any psychologist, psychiatrist, anyone that said Dozer had any mental illness at all? You haven't heard any evidence on that. That's just Mr. Dunn's speculation. He wants you to accept that Mr. Dozer was mentally ill and that somehow means that he's to be treated differently. There's been no evidence that he was mentally ill, no evidence at all.

(ER 183-184). And further:

> And, again, on this issue of mental illness, no evidence of that at all. Zero. If this really was a case about how we treated or responded to a mentally ill person, you would have seen a medical doctor, a psychiatrist, a psychologist come in and tell you that they've either diagnosed Mr. Dozer or that there was evidence of that. You're being asked to speculate on that, and that burden of proof when you're asked to speculate, the Plaintiffs aren't carrying their burden by proving their case by a preponderance of the evidence.

(ER 188).

On October 20, 2016, the jury returned a verdict in favor of Appellees. (ER 004-006). That same day, the District Court entered judgment based on the jury's verdict. (ER 003). This timely appeal followed.

## STANDARD OF REVIEW

This Court reviews evidentiary rulings for an abuse of discretion. *See Wagner v. County of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013). This Court will reverse erroneous evidentiary rulings where, as here, the district court abused its discretion and the error was prejudicial. *See*, *e.g.*, *Geurin v. Winston Indus., Inc.*, 316 F.3d 879, 882 (9th Cir. 2002); *Glover v. BIC Corp.*, 6 F.3d 1318, 1328–29 (9th Cir. 1993).

## SUMMARY OF ARGUMENT

The Court should remand this case to the District Court for a new trial. The mental illness from which Mr. Dozer suffered was central to this case and the question for the jury was whether, in light of that mental illness and its clear signs, Officer Stringer's actions were reasonable and appropriate when he confronted and shot Mr. Dozer, killing him. The District Court abused its discretion when it excluded evidence of Mr. Dozer's mental illness from being introduced at trial.

Although the District Court correctly acknowledged that evidence of Mr. Dozer's mental illness was relevant in "determining whether the force used in this instance was reasonable," it erred by holding that Ms. Crawford's personal

observations of her son's behavior and mental state were nonetheless irrelevant merely because they did not occur on the date of the incident. (ER 017-018).

That ruling was wrong. Ms. Crawford had personally observed years of behavior in which her son heard voices, lost his grip on reality, talked to himself, and lived on the streets. Her testimony clearly "ha[d] any tendency to make [it] more or less probable" that Mr. Dozer suffered from mental illness. Fed. R. Evid. 401. And the existence of mental illness was a threshold issue in proving that Officer Stringer used excessive force and negligently violated Mr. Dozer's rights by failing to follow policing standards for people suffering from mental illness. This critical evidence easily met the broad definition of relevance and satisfied the low bar for admissibility.

The District Court further erred in ruling that Ms. Crawford could not testify about Mr. Dozer's mental illness because she was not a medical expert. Even accepting that Ms. Crawford could not testify concerning Mr. Dozer's *precise diagnosis*, her personal observations of his behavior tended to establish—and indeed overwhelmingly did establish—the existence of some form of mental illness, as any lay person would easily understand. The jury was entitled to hear this evidence.

The prejudice from this erroneous ruling was amply demonstrated in Officer Stringer's closing argument, when his counsel argued to the jury that it should

- 16 -

reach a verdict against Ms. Crawford because she had not presented sufficient evidence of Mr. Dozer's mental illness. Counsel argued that by failing to present such evidence, she had failed to show that Mr. Dozer should have been treated any differently. (ER 183-184). At the same time, Officer Stringer's counsel wrongly insinuated without any evidence whatsoever that Mr. Dozer was under the influence of drugs when Officer Stringer shot and killed him. Further, defense counsel repeatedly stated in front of the jury throughout trial that there was no evidence of mental illness. It is no surprise that the jury ruled against Ms. Crawford given the lack of evidence on this threshold issue.

In sum, the District Court abused its discretion in excluding key relevant and probative evidence of Mr. Dozer's mental illness. That ruling resulted in prejudice to Ms. Crawford. In light of this error and resulting prejudice, the Court should reverse the District Court's order and remand for a new trial.

## ARGUMENT

Ms. Crawford brought this lawsuit against Appellees for excessive force under 42 U.S.C. § 1983 and state law negligence after Officer Stringer shot and killed Mr. Dozer, her mentally ill son. Her claims rested on the fact that Officer Stringer failed to follow appropriate policing standards for dealing with individuals, like Mr. Dozer, suffering from mental illness. That Mr. Dozer was in fact suffering from mental illness was a key threshold fact supporting these claims.

The District Court erred in excluding evidence of Mr. Dozer's schizophrenia and mental illness from being introduced at trial. This exclusion was an abuse of discretion that prejudiced Ms. Crawford. This Court should reverse and remand for a new trial.

## I. The District Court Abused Its Discretion When It Excluded Evidence of Mr. Dozer's Mental Illness From Being Introduced at Trial

### A. The Standard for Admitting Relevant Evidence is Inclusive

The plain language of the Federal Rules of Evidence and federal courts nationwide, including the U.S. Supreme Court, make clear the definition of "relevant" is expansive. *See*, *e.g.*, Fed. R. Evid. 401 ("Relevant evidence" is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 387-388 (2008); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587 (1993). This Court and sister circuits have agreed that the standard for admissibility of relevant evidence is very low. *See*, *e.g.*, *United States v. Curtis,* 568 F.2d 643, 645 (9th Cir. 1978); *United States v. Jordan,* 485 F.3d 1214, 1218 (10th Cir. 2007); *United States v. Murzyn,* 631 F.2d 525, 529 (7th Cir. 1980).

The District Court abused its discretion in this case by excluding evidence of Mr. Dozer's mental illness, which was relevant and probative in determining

whether Officer Stringer's actions were reasonable when he shot and killed Mr. Dozer.

### B. Evidence of Mr. Dozer's Mental Illness Was Relevant to Both the Excessive Force and Negligence Claims

Evidence of Mr. Dozer's mental illness was not only relevant, but critical, to Ms. Crawford's claims. It was critical to the excessive force claim because the existence of mental illness tends to show that "it should have been apparent to officers that the person they used force against was emotionally disturbed." *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011). Indeed, without evidence that Mr. Dozer was *in fact* emotionally disturbed because of his mental illness, it was nearly impossible to demonstrate that it should have been apparent to Officer Stringer that he was emotionally disturbed. The evidence was further relevant to whether Mr. Dozer's behavior on the day in question was consistent with mental illness, whether Officer Stringer's perception of Mr. Dozer's behavior was accurate and reasonable, and whether Officer Stringer's conduct in confronting, shooting, and killing Mr. Dozer complied with police training on responding to mentally ill individuals.

Similarly, on the negligence claim, the existence of a mental illness was an essential fact that determined the applicable standard of care. Mr. Dozer was owed specific treatment as a mentally ill person because he was in fact mentally ill. Without being able to prove that the proper standard of care in this case was the

one specific for persons with mental illness, Ms. Crawford could not prove her negligence claim.

### 1.    Evidence of Mental Illness Is Relevant to Whether Police Use of Force is Reasonable

This Court has recognized that evidence of mental illness is relevant in excessive force cases.  It has specifically held that the jury should consider "whether it should have been apparent to officers that the person they used force against was emotionally disturbed."  *Glenn*, 673 F.3d at 872.  It has further recognized that an officer's tactical conduct and decisions during an encounter with an emotionally disturbed person are relevant considerations which bear on the objective reasonableness of the officer's use of force. *See id.*; *see also Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) ("a detainee's mental illness must be reflected in any assessment of the government's interest in the use of force"), citing *Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001).

This Court recognized the importance of the victim's mental state in *Glenn*, where the defendants argued that the officers were justified in using force because the victim posed an immediate threat to the safety of officers or others.  *Glenn*, 673 F.3d at 872.  This Court overturned the district court's decision granting summary judgment for defendants, and explained that one circumstance relevant to the analysis of the reasonableness of an officer's use of force is whether the officers

were or should have been aware that the victim was emotionally disturbed. *Id.* In fact, this Court stated, "[e]ven when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly force," "the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual." *Id.* at 876, quoting *Deorle*, 272 F.3d at 1283.

Similarly, this Court in *Deorle* found that an officer's use of non-lethal force against a man that was emotionally disturbed after being diagnosed with Hepatitis-C was excessive and "plainly in excess of the governmental interest at stake." 272 F.3d at 1275-76, 1286. This Court recognized that "the tactics to be employed against[] an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense." *Id. a*t 1282-83. *Deorle* further stated that when dealing with mentally unbalanced persons, using "officers and others trained in counseling is ordinarily advisable, where feasible, and may provide the best means of ending a crisis." *Id.* at 1283.

Evidence of Mr. Dozer's mental illness here, as in those cases was probative of (1) whether Officer Stringer should have known his conduct was consistent with

mental illness, and (2) whether Officer Stringer's tactics and use of force were reasonable in light of Mr. Dozer's mental illness.

### 2. Evidence of Mental Illness Is Relevant to the Standard of Care Officer Stringer Owed to Mr. Dozer

Evidence of mental illness was also a critical component of Ms. Crawford's state law negligence claim. Two essential elements of a negligence claim are "(a) a legal duty to use due care; [and] (b) a breach of such legal duty." *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996). In this case, Ms. Crawford presented expert testimony that a police officer's duties in responding to a person suffering from mental illness differ from those in responding to an individual without mental illness. The expert testified as to the various ways that Officer Stringer was trained to identify and respond to mental illness. For the jury to determine that Officer Stringer breached a duty of care to Mr. Dozer, however, it first had to determine that Mr. Dozer was in fact mentally ill. Otherwise, as Officer Stringer's counsel later argued, Mr. Dozer would not be entitled to be "treated differently." (ER 184). This was, therefore, a threshold issue in Ms. Crawford's case.

### 3. The District Court Erred in Holding that Ms. Crawford's Testimony was Irrelevant Because Her Observations Did Not Occur on the Day of the Incident

Importantly, even the District Court in this case recognized that evidence of Mr. Dozer's mental illness was relevant in determining whether Officer Stringer acted reasonably when he aggressively confronted Mr. Dozer without backup, and

ultimately shot and killed him. (ER 017 ("Whether [Mr. Dozer's conduct] was due to being under the influence of a drug such as PCP or because [he] was suffering from mental illness is relevant to determining whether the force used in this instance was reasonable.")). But it then erred in reasoning that Ms. Crawford's testimony about Mr. Dozer's mental illness was irrelevant merely because those observations did not occur on the day of the incident.

This ruling was wrong. Mental illnesses like schizophrenia are chronic conditions. The Court implicitly acknowledged as much when it held that an expert diagnosis—which would have occurred at some past point in time—would have been admissible. In the same vein, Ms. Crawford's observations over the course of Mr. Dozer's life would have been probative as to whether he suffered from a mental illness at the time of the incident.

### C.     The District Court was Wrong When It Determined that Ms. Crawford Could Not Testify Regarding Her Son's Mental Illness Because She is Not an Expert.

The District Court erred in holding that Ms. Crawford's personal observations were inadmissible because she was not an expert qualified to opine on Mr. Dozer's precise diagnosis. Contrary to the court's ruling, she was not trying to be an expert. Federal Rule of Evidence 701 states that a lay witness may offer opinion testimony to the extent that it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to

determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Courts nationwide have held that lay witnesses may provide factual and opinion testimony concerning observed symptoms of mental illness consistent with Rule 701. For example, the D.C. Circuit has long held that "lay witnesses may testify upon observed symptoms of mental disease, because mental illness is characterized by departures from normal conduct[, which is a] matter[] of common knowledge, and so lay persons may conclude from observation that certain observed conduct is abnormal. Such witnesses … may testify as to their own observations and may then express an opinion based upon those observations." *Naples v. United States*, 344 F.2d 508, 515 (D.C. Cir. 1964); *see also United States v. Pickett*, 470 F.2d 1255, 1257-58 (D.C. Cir. 1972); *Carter v. United States*, 252 F.2d 608, 618 (D.C. Cir. 1957); *Tatum v. United States*, 190 F.2d 612, 616 (D.C. Cir. 1951).

The Seventh Circuit, in *United States v. Lawson*, 653 F.2d 299, 302 (7th Cir. 1981), found that FBI agents' lay testimony on the issue of whether the defendant was insane or not was properly admitted as opinion testimony under Rule 701. Specifically, the Seventh Circuit stated

> The [Federal Rules of Evidence] permit the introduction of substantially more evidence than was formerly admissible. They place great reliance on cross-examination, for much evidence is now admissible

> subject to cross-examination as a means of verification. It
> is then up to the fact finder to determine the weight to be
> attached to that evidence.

*Id.* at 303 (emphasis added).

Similarly, in *Chiang v. Potter*, No. 09 CIV 3794 JCF, 2010 WL 3185778, at

*3-4 (S.D.N.Y. Aug. 11, 2010), the defendant moved to preclude lay witnesses

from testifying regarding the plaintiff's mental condition. The court denied the

motion to the extent that it related to testimony about observed facts, and granted

the motion to the extent the testimony related to opinion about plaintiff's mental

condition. In so doing, the court stated:

> Here, the parties appear to be in accord that lay witnesses may testify
> as to their observations of the plaintiff's behavior and appearance, but
> that they may not offer an opinion as to his mental state. The parties'
> proposed solution is consistent with the law: a lay witness may testify
> to his own perceptions but not to information that requires scientific,
> technical, or other specialized knowledge.

*Id.* at *4 (emphasis added). *See also United States v. Mitchell*, No.

2:08CR125DAK, 2009 WL 3181938, at *5-6 (D. Utah Sept. 28, 2009) (holding

that lay witness testimony regarding the mental state of a defendant during a

competency hearing was admissible); *Lawson v. Lawson*, No. 3:14-CV-00345-

WGC, 2015 WL 5474763, at *2-3 (D. Nev. Sept. 17, 2015) (allowing plaintiff to

testify about how he felt and allowing a third party to testify about plaintiff's

symptoms, but not to testify about specific diagnoses).

Contrary to these courts, the District Court in this case excluded evidence of Mr. Dozer's mental condition, including testimony from Ms. Crawford about her own perceptions and her own personal actions in (1) taking Mr. Dozer to mental health facilities to receive treatment, (2) discussing the prescriptions that she personally observed Mr. Dozer receiving and taking to treat his mental illness, and (3) observing him talk out loud to himself and describe hearing voices in his head. (ER 220-221). These are some of the examples about which Ms. Crawford should have been allowed to testify based on her own personal observations and perceptions, without any need to be designated as an expert. She was not seeking to testify about a precise diagnosis, but rather about how her son's condition presented itself. *See Lawson*, 2015 WL 5474763, at *1

The District Court took an unwarranted narrow interpretation of both relevance and permissible lay testimony when it excluded evidence of Mr. Dozer's mental illness, including any personal observations and perceptions from lay witnesses such as Ms. Crawford.

## II. The District Court's Error in Excluding Relevant Evidence of Mr. Dozer's Schizophrenia and Mental Illness Prejudiced Ms. Crawford.

Had the jury known about Mr. Dozer's mental illness, there is a strong possibility it would have reached a different verdict. The District Court's erroneous evidentiary ruling deprived the jury of evidence necessary to answer a threshold question in the case—whether Officer Stringer violated the rights of a

man suffering from mental illness. This Court will reverse and remand for a new trial where, as here, the district court's erroneous evidentiary ruling prejudiced the party whose evidence was excluded. *See*, *e.g.*, *Wagner*, 747 F.3d at 1052; *Geurin*, 316 F.3d at 882; *Glover*, 6 F.3d at 1328.

The prejudice from the District Court's ruling is evident. The existence of mental illness was the fundamental premise of Ms. Crawford's claims. In claiming that Officer Stringer acted negligently by failing to follow procedures for interacting with persons suffering from mental illness, Ms. Crawford's case necessarily relied on establishing that Mr. Dozer was suffering from mental illness. It was only after the jury accepted the premise that Mr. Dozer suffered from mental illness, that it could fault Officer Stringer for failing to treat him as a mentally ill person. In other words, if the jury were not convinced that Mr. Dozer was in fact mentally ill, how could it conclude that Officer Stringer should have identified him as such and acted differently?

The closing argument from Officer Stringer's counsel both demonstrated and compounded this prejudice. Officer Stringer's counsel repeatedly argued to the jury during trial that it should rule against Ms. Crawford because there was no evidence on mental illness. (ER 183-184) ("He wants you to accept that Mr. Dozer was mentally ill and that somehow means that he's to be treated differently. There's been no evidence that he was mentally ill, no evidence at all."); (ER 188)

("You're being asked to speculate on that, and that burden of proof when you're asked to speculate, the Plaintiffs aren't carrying their burden by proving their case by a preponderance of the evidence."). He further insinuated, while knowing it to be untrue,[4] that drug use explained Mr. Dozer's erratic behavior on the day of the shooting. (ER 184).

In short, even Officer Stringer's counsel believed Ms. Crawford could not win without proving that Mr. Dozer was in fact mentally ill, despite his previous argument to the Court that the evidence was irrelevant. His closing argument belies any notion that the ruling was not prejudicial. *See United States v. Toney*, 599 F.2d 787, 790-91 (6th Cir. 1979) (reversing a conviction where the prosecution had argued that the jury should disregard the defendant's defense for lack of evidence that had in fact been excluded, and stating that "the nature of the closing argument foreclose[d] any possible claim that the exclusion of [the evidence] could have been harmless error").

This Court has reversed similar erroneous rulings. In *Wagner*, this Court vacated a judgment after a jury verdict involving excessive force against a person with mental illness because the district court's erroneous ruling prejudiced the plaintiff. Specifically, this Court held it was prejudicial when the district court

---

[4] Officer Stringer's counsel knew that Dozer suffered from schizophrenia and that a post-shooting drug test was negative. (ER 028, 026).

refused to allow plaintiff to testify about her conversations with her brother, the victim, which would have shown his state of mind. *See* 747 F.3d at 1052-53.

In *Geurin*, this Court vacated a final judgment after a jury verdict because the district court erred in excluding all evidence concerning the maintenance, or lack thereof, of equipment prior to an accident because the evidence was competent and relevant to an essential element of the case. *See* 316 F.3d at 884-85. The district court's refusal to admit the evidence was prejudicial "and likely tainted the jury's verdict" because, by preventing the jury from considering the alternative explanation of the accident's cause, the district court left the jury with only one potential explanation and essentially preordained the outcome. *Id.* at 885.

Here, the District Court's erroneous ruling precluding evidence of Mr. Dozer's mental illness prejudiced Ms. Crawford because the jury was not able to hear Mr. Dozer's story and establish the foundational fact that Mr. Dozer suffered from mental illness. (ER 219-226). In so doing, like in *Geurin*, the District Court essentially preordained the outcome because the jury heard only Officer Stringer's testimony that Mr. Dozer may have been under the influence of drugs when Officer Stringer shot and killed him. (ER 016-019, 038). Ms. Crawford was not allowed to provide any alternative explanation to Officer Stringer's testimony, and the District Court's decision tainted the jury's verdict. This erroneous ruling and the resulting prejudice mandates remand for a new trial.

**III.   This Case is Emblematic of a Larger Injustice That Mentally Ill Persons Constitute a Larger Share of Victims of Excessive Force Than in Years Past**

The District Court's decision and analysis perpetuates a larger injustice: the treatment of mental illness as irrelevant to police conduct has resulted in the avoidable death of countless individuals suffering from mental illness.  Out of the nine hundred eighty-seven people killed by police officers nationwide in 2017, close to one in four "were described as experiencing some form of mental distress at the time of the encounter with police."  Sullivan*, supra*.  In Bakersfield where Mr. Dozer was killed, a "significant percentage" of the persons shot and killed by police officers in the past five years "exhibited signs of mental illness or disability."[5]  AMERICAN CIVIL LIBERTIES UNION CALIFORNIA, PATTERNS & PRACTICES OF POLICE EXCESSIVE FORCE IN KERN COUNTY 2 (Nov. 2017).  Over a third of the persons shot and killed by the Los Angeles Police Department in 2015 had documented signs of mental illness.  Kate Mather & James Queally, *More Than a Third of People Shot by L.A. Police Last Year Were Mentally Ill, LAPD Report Finds*, L.A. TIMES, Mar. 1, 2016.  The risk of being killed during a police

---

[5]  The Bakersfield Police Department is considered "one of the deadliest police departments in the country" and, in 2015, was responsible for the highest rate of police homicides per capita of the country's sixty largest police departments.  AMERICAN CIVIL LIBERTIES UNION CALIFORNIA, *supra* at 2.   The American Civil Liberties Union has calculated that, between 2013 and November 2017, Bakersfield police officers shot and killed at least nineteen people, including Mr. Dozer.  *See id.*

incident is significantly greater for individuals with mental illness. CORDNER, *supra* at 1 (estimating that the people with severe mental illness are four times more likely to be killed by police); DORIS A. FULLER ET AL., TREATMENT ADVOCACY CENTER, OVERLOOKED IN THE UNDERCOUNTED: THE ROLE OF MENTAL ILLNESS IN FATAL LAW ENFORCEMENT ENCOUNTERS 1 (2014) (estimating the risk of being killed during a police incident is sixteen times higher for a person with untreated mental illness than for other civilians approached and stopped by the police). Mr. Dozer is one of hundreds of people with mental illness who are killed by police officers each year in the United States.

To combat these alarming statistics, police departments have developed mandatory trainings for officers on how to act during encounters with persons with mental illness. In California, new officers are trained in various learning domains, one of which specifically pertains to persons with disabilities. —(ER 145); CALIFORNIA COMMISSION ON PEACE OFFICER STANDARDS AND TRAINING, MENTAL HEALTH TRAINING IN THE REGULAR BASIC TRAINING COURSE, https://www.post.ca.gov/mental-health-training-in-the-regular-basic-course.aspx. The fifteen hour learning domain is designed to "[e]nhance the recognition of behaviors that are indicative of disability or mental illness," "[p]rovide de-escalation skills," and "[t]each situation-appropriate responses." *Id.* Sixteen of the

other required learning domains also discuss particular issues relating to persons with disabilities. *Id.*

Officers have regular opportunities to apply these trainings. An estimated seven percent of police contacts in jurisdictions with 100,000 or more people involve persons with mental illness. CORDNER, *supra* at 1. A three-city study conducted in 1998 found that ninety-two percent of patrol officers had at least one encounter with a person with mental illness in crisis within the previous month, with an officer on average encountering such an individual six times in the previous month. *Id.* The trainings help prevent these ordinary police encounters from escalating into situations that are more dangerous for everyone involved.

By aggressively confronting Mr. Dozer without further investigation despite indications of mental illness, without waiting for backup (that would have arrived within a minute), and immediately using deadly force on him where non-lethal options were available to him, Officer Stringer did not comply with the standards developed by police departments and mental illness specialists across the country in response to the alarming rates of deadly force used by officers against individuals with mental illnesses. Mr. Dozer was acting erratically but harming no one. Yet he was fatally shot within a minute of Officer Springer's arrival. Mr. Dozer's death could have been prevented if Officer Stringer had followed the appropriate procedures based on his training.

The District Court's treatment of Mr. Dozer's history of mental illness as irrelevant represents a significant step back from the growing awareness that police need to take a specialized approach when responding to a situation where there is an indication that an involved individual may be mentally ill.

## CONCLUSION

The District Court abused its discretion when it excluded evidence of Mr. Dozer's mental illness from being introduced at trial. The evidence was highly relevant, and Ms. Crawford, as Mr. Dozer's mother, was competent to testify about what she witnessed and perceived. This exclusion of evidence regarding Mr. Dozer's mental illness prejudiced Ms. Crawford at trial because evidence of mental illness was probative of whether Officer Stringer acted reasonably when he aggressively confronted Mr. Dozer without backup and shot him.

Therefore, Appellant Leslie Crawford respectfully requests that this Court reverse the District Court's order excluding evidence of Michael Dozer's mental illness and remand the case to the District Court for a new trial.

Dated:        February 26, 2018          Respectfully submitted,

CROWELL & MORING LLP


*/s/ Daniel P. Wierzba*
Emily T. Kuwahara
Daniel P. Wierzba
Joel Mallord
Alice Hall-Partyka
*Attorneys for Appellant*
*Leslie Crawford*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Ms. Crawford states that she is not aware of any related case before this Court.


Dated:        February 26, 2018            Respectfully submitted,

                                           CROWELL & MORING LLP


                                           */s/ Daniel P. Wierzba*
                                           Emily T. Kuwahara
                                           Daniel P. Wierzba
                                           Joel Mallord
                                           Alice Hall-Partyka
                                           *Attorneys for Appellant*
                                           *Leslie Crawford*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Ninth Circuit Rule 32-1 because this brief contains 7,883 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

Dated:      February 26, 2018          Respectfully submitted,

                                       CROWELL & MORING LLP


                                       */s/ Daniel P. Wierzba*
                                       Emily T. Kuwahara
                                       Daniel P. Wierzba
                                       Joel Mallord
                                       Alice Hall-Partyka
                                       *Attorneys for Appellant*
                                       *Leslie Crawford*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2018, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for

the Ninth Circuit by using the appellate CM/ECF system, with service on the

following registered CM/ECF users:

Michael G. Marderosian, Esq.
Heather S. Cohen, Esq.
MARDEROSIAN & COHEN
1260 Fulton Street Fresno, CA 93721
Telephone: (559) 44 1-7991
Facsimile: (559) 441-8170
Email: mick@mcc-legal.com; heather@mcc-legal.com
Attorneys for Defendants/Appellees
CITY OF BAKERSFIELD and AARON STRINGER

With service by first-class mail, postage prepaid, to the following:

Michael Eugene Dozer, CDC#AX5205
SIERRA CONSERVATION CENTER
5100 O'Byrnes Ferry Road
Jamestown, CA 95327
Telephone: Not applicable (Mr. Dozer is currently incarcerated)
Facsimile: Not applicable (Mr. Dozer is currently incarcerated)
Email: Not applicable (Mr. Dozer is currently incarcerated)
NOMINAL DEFENDANT

Dated:       February 26, 2018              Respectfully submitted,

                                            CROWELL & MORING LLP


                                            */s/ Daniel P. Wierzba*
                                            Daniel P. Wierzba
                                            *Attorneys for Appellant*
                                            *Leslie Crawford*

## ADDENDUM

**Statutes, Regulations, Ordinances, and Rules**

<div align="right"><strong>Page(s)</strong></div>

42 U.S.C. § 1983.................................................................................. A-1

42 U.S. Code § 1983 – Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.